**United States District Court**

For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

John Frederic Garmon,

         Plaintiff,

    v.

Peralta Community College District, et al.,

         Defendant(s).

_____/

No. C 04-3772 WDB

**COURT'S PROPOSED VOIR DIRE**

1

# IMPANELING A CIVIL JURY

**\*\*\*\*\*** Have enough <u>copies</u> of the standard <u>background voir dire questions</u> so that each person in the venire will have one.

**\*\*\*\*\*** Have pencils for each person in the venire.

**Give counsel alphabetical list of jurors**.  Court has both the alphabetical list and a randomized list – the latter is not disclosed to the lawyers but is used by the court to call jurors into the jury box (in numerical order as the names have been randomly listed).

1. **Welcome** and thank the entire venire.

2. Courtroom **deputy calls the roll**.

3. **Introduce** myself and my staff for this trial:

    Law clerks: Michelle Sicula and Sarah Weinstein

    Courtroom deputy: Ivy Garcia

    Court reporter(s): Raynee Mercado

4. This morning we will be selecting a jury for a <u>civil</u> lawsuit, not for a criminal case.
We anticipate that it will <u>take about five days</u> to complete the trial of this case.

2

5. Courtroom **deputy administers oath** to all people in venire.

6. Courtroom deputy **calls first fourteen jurors on randomized list into the jury box.** Remaining prospective jurors remain seated in audience area (other side of gate, rail).

7. **Introduce the parties and their attorneys**:

At this juncture I will introduce the parties and their lawyers. Please pay careful attention because in a few minutes I will ask whether, before today, any of you have had any contact with or heard anything about any of them.

The <u>plaintiff</u> in this case is:

**John Garmon,** who served between 2002 and the 2004 academic year as the President of what was then known as Vista Community College, one of four colleges in the Peralta Community College District.

The <u>lawyers</u> for Dr. Garmon are:

Stephanie Wells and William Hopkins, who practice in Tiburon.

The <u>defendants</u> in this case are:

**The Peralta Community College District and its Board of Trustees, and**

**Darryl Moore,** who, at the pertinent times, was a Trustee of the College District and is sued in his individual capacity.

4

The <u>lawyer</u> representing the defendants is:

Larry Frierson, whose office is in Calistoga.

## **Explain the Purposes and Mechanics of the Jury Selection Process**

There are **two primary purposes** of the jury selection process in which we will engage today:

the <u>first is</u> to **make sure that none of the jurors who sit** in this case is **biased or prejudiced** against any party or,

before today, had any **personal knowledge** of the factual matters that this case involves.

the <u>second is</u> to give the parties an opportunity to get the kind of **balance or mix of perspectives and backgrounds** in the jury that they feel is best suited to the case.

5

<u>Explain the **mechanics** of the jury selection process</u>:

First, I will ask **all** the prospective jurors some general questions.

Then each of the 14 people in the jury box will answer, aloud, each of the written questions posed on the sheet of paper we have given each of you.

After these people have addressed the questions on this sheet of paper, I will ask them some additional questions that will be more focused on matters relating to the case at hand.

While I am asking these questions of the group of 14 jurors who are in the jury box, <u>all the other prospective jurors should pay careful attention to the questions and should make a note</u> (e.g., on the back of the sheet we have given you that has the general background questions) <u>of any question to which you would answer "yes"</u>.

> It is very likely that some of you, perhaps all of you, will be asked, one at a time, to replace prospective jurors who are now seated in the jury box but who are excused for one reason or another.  When one of you is called to replace a juror who has been excused, I will want to know if you would answer "yes" to any of the questions I have asked of the group in the jury box.

As we move through this process <u>I may excuse some</u> prospective jurors "**for cause**,"  e.g., because they had personal knowledge of important matters that are part of this case before they came here today.

Each prospective juror who is excused for cause will be replaced by one of the people outside the jury box.  When such a replacement occurs, we will ask the new prospective juror to provide answers, orally, to the <u>background questions</u> on the sheet you have been provided.

6

<u>Then</u> we will ask the new person <u>whether</u> he or she <u>would answer "yes" to any of the questions that I have thus far posed</u>.  If so, we will identify the questions and ask for some follow-up information.

Our goal at the close of this part of the jury selection process is to have 14 prospective jurors seated in the jury box who are not excusable for cause.

After we have 14 jurors in the jury box who are not excusable for cause, the law permits each side to exercise what are called **"<u>peremptory challenges</u>**," meaning that <u>each side</u> may excuse up to <u>three</u> prospective jurors.

> When parties excuse prospective jurors in this process it is <u>not because of any personal dislike or distrust</u>, but in order to get a final jury panel that has the kind of balance and mix that the parties feel is appropriate for this case.

The parties will exercise these peremptory challenges <u>confidentially and one at a time by passing a list</u> of the 14 prospective jurors who are seated in the jury box back and forth until each side has used all the challenges it chooses to use.  [plaintiff exercises first challenge, then defendant, then back to plaintiff, etc.]

<u>After this process</u> has been completed, **<u>the remaining 8 jurors will constitute the jury</u> for this trial.**  In the event that more than 8 jurors remain, the 8 who have been assigned the lowest numbers will serve. The others will be excused.

We will **<u>not have any "alternate jurors</u>**."

This means that all 8 of the people who comprise the jury will hear the evidence and arguments and will participate fully in the deliberations and vote on the verdicts.

7

**In federal court, a verdict must be <u>unanimous</u>.**

<u>General admonition about listening to and answering the questions posed during the voir dire process:</u>

Listen carefully to each question I pose.

When deciding what your answer is, work hard to be honest with yourself.

Do not offer an answer simply because you think it is what I want to hear.

Do not try to guess what the "right" answer is, or what the "politically correct" answer is.

There is no such thing, in this court, as a "politically correct" answer, and the only 'right' answers are those that are thoughtfully truthful.

**GENERALLY WHAT THIS CASE IS ABOUT**

At this point I would like to give you some information about this case.

The purpose of providing this information at this juncture is to enable you to determine whether, before coming here this morning, you acquired any information about the matters in dispute here.

This brief description is not evidence and is not part of the formal instructions that I will give later.

8

The plaintiff in this case, John Garmon, served as the President of Vista Community College, one of the four colleges in the Peralta Community College District, between 2002 and 2004.

In 2004, the Board of Trustees of the Peralta Community College District, acting on the recommendation of the District's Chancellor, Elihu Harris, decided not to renew Dr. Garmon's contract to serve as President of Vista College.

Given the Board's decision to select a new President, Dr. Garmon would have been permitted to remain in the District as a teacher, but at a much lower salary.

After the Board had made its decision, a newspaper reporter for the Berkeley Daily Planet, Matthew Artz, spoke by phone with Dr. Garmon about the situation.  The reporter also spoke with Darryl Moore, one of the Trustees.  After these conversations, the reporter (Mr. Artz) wrote a story for the paper that set forth the different views on the matter that were held by Dr. Garmon and Mr. Moore.

In the lawsuit that Dr. Garmon has filed he contends that his race (Caucasian) and his gender (male) were motivating factors in the District's decision not to renew his contract as the President of Vista Community College.

In addition, Dr. Garmon contends that during his tenure as President he complained that the District had made some employment decisions based on race – and that a desire to retaliate against him for voicing these concerns also was a motivating factor in the District's decision not to renew his contract as President.

Dr. Garmon further contends that he was defamed by statements attributed to Mr. Moore in the newspaper article that was published about the decision not to renew Dr. Garmon's contract as President.

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## GENERIC QUESTIONS FOR <u>ALL</u> MEMBERS OF THE VENIRE

1.  Do any of you have any <u>serious</u> health or hearing problems that would prevent you from serving?

2.  Do any of you <u>not</u> understand or read English?

3.  Before today, have any of you had any contact with or heard anything about any of the parties or lawyers in this case?

4.  Before today, have any of you had any contact with or heard anything about me or any members of the court staff I have introduced?

5.  Do any of you have any personal knowledge of any of the matters that are the subject of this case?

6.  Before today, had any of you heard anything about the dispute between these parties or about the events out of which it has arisen?

11

**PRIOR CONTACT WITH OR KNOWLEDGE OF <u>POTENTIAL WITNESSES</u>**
**[ask these questions of <u>all</u> the members of the venire]**

At this juncture I will read to you a list of the people from whom testimony might be presented (either live or by deposition) during the trial.

We are not certain that all these people will testify -- but I need to err on the side of caution and include all of them in the list.

Please listen carefully to each name.

> If you hear the name of any person with whom you have had any contact, or about whom you have heard anything, please raise your hand.

**[<u>READ NAMES OF POSSIBLE WITNESSES</u>]**

1. Elihu Harris, Chancellor of Peralta Community College District

2. Barbara A. Beno, former President of Vista Community College

3. Dr. Katherine Kocel, member of the Vista Community College Faculty Senate

4. Ron Temple, former Chancellor of the Peralta Community College District

5. Evelyn Wesley, President of Merritt College
6. Cecelia Cervantes, President of Alameda College

7. Odel Johnson, President of Laney College

12

8. Lynn Baranco, former President of the Board of Trustees of the Peralta Community College  District

9. Matthew Artz, formerly a reporter for the Berkeley Daily Planet

10. Marilyn Montague, a representative of the Peralta Chapter of SEIU Local 790

11. Karen Carraway, English tutor for students at Vista Community College

12.  Trudy Largent, Associate Vice Chancellor for Human Resources, Peralta Community College District

13. James Garrett, formerly a dean at Vista Community College

14. Virginia Durran, member of the office staff at Vista Community College

15. Alona Clifton, former member of the Board of Trustees of the Peralta Community College District

16. William Riley, a member of the Board of Trustees of the Peralta Community College District at the time the Board decided not to renew Dr. Garmon's contract

17. Mike Baldanelli, Risk Manager at Vista Community College

18.  Diane Piper – former employee of the District

19. Venesse Metcalf, Director of Human Resources for Yosimitea Junior College District

20. Linda Handy, member of the Board of Trustees of the Peralta Community College District

13

21. Dr. Amy Henderson, economic analyst

22. Dr. Paul Miller

_____

23. Susan Duncan, former member of the Board of Trustees of the Peralta Community College  District

24.  Joseph Bielanski, member of the faculty at Vista Community College

25.  Joan Beresin, member of the faculty at Vista Community College

26. Shirley Fogarino, assistant to the President of Vista Community College

27. Judy Walter, President of Vista Community College

[Follow-up questions if any prospective juror indicates that he/she knows or has heard of any of the witnesses:

What are the circumstances under which you came to know, know about, or have contact with this person [witness]?

What do you know about the person?

Is there any reason you would ascribe either more or less credibility to testimony this person might give than to testimony from any other witness who might be called in this case?

14

Does your prior knowledge of or contact with this witness cause you to question your capacity to decide this case in a fair and impartial manner?

15

**[Shift focus to the 14 people in the jury box]**

<u>HAVE EACH OF THESE 14 PROSPECTIVE JURORS ANSWER ALOUD THE GENERAL BACKGROUND QUESTIONS ON THE SHEET THAT HAS BEEN HANDED OUT.</u>

1.  Please state <u>your name</u>:

2.  Please tell us <u>what city you live in</u>:
      a.  How long have you lived there:
      b.  Where did you live before:

3.  What is your <u>current occupation</u>:
      a. How long have you been so employed:
      b. What are your <u>previous occupations</u>, if any:

4.  Please give us the following information about your <u>family</u>:
      a.  Are you <u>married or do you have a domestic partner</u>:
          1.  If so, what is your spouse's or partner's current occupation and by whom is
              he/she employed?
      b.  Do you have any children?
         If so:
            1.  How many?
            2.  What ages?
            3.  What are their occupations, if any?

5. Did you ever serve in the <u>military or the armed forces reserves</u>?

6.  Please give the <u>names of any organizations of which you are a member</u>.
**[Ask the following questions only of the 14 prospective jurors]**

**If** any of you would answer **yes** to any of these questions, please **raise your hand**.

1. Before today, had any of you **met or heard of** any of the **other prospective jurors** who are sitting in the jury box now?

2. During the past five years, have any of you **served on a jury**?

    A. Was it a civil or a criminal case?

    B. If civil, what, in general, was the nature of the plaintiff's claim?

    C. Without telling me the outcome, or who won, please tell me whether or not the jury was able, in the end, to reach a verdict.

There is a <u>substantial difference</u> between the <u>burden of proof</u> in a <u>criminal</u> trial and the burdens of proof that may apply in <u>civil</u> trials.

> In a **criminal** trial, the prosecution fails unless it establishes all the essential facts **beyond a reasonable doubt**. That demanding standard never applies in a <u>civil</u> case.

> In civil cases, as this is, there are two different potentially applicable standards, one of which is called "preponderance of the evidence" and the other is called "clear and convincing evidence."

> The "preponderance of the evidence" standard applies to most of the factual issues that arise during civil trials.

> > To satisfy this standard, the proponent of a factual assertion must prove that the fact is more likely true than not true.

> I will give instructions about both of the standards that could apply to factual issues in civil cases later.

> For now, it is important only that you understand that both of the standards that could apply in civil cases are less demanding (on the proponent of a factual assertion) than the standard that the law imposes on the government in a criminal trial.

18

**Question** <u>for the prospective jurors in the box</u>: Of those among you who have served on juries before, <u>is there any one of you who would not</u> be able to **ignore what you were told about the law in other cases** as you sit in this trial -- and to base your deliberations in this case solely on the law as I instruct you in it and on the evidence that I admit?

3. Have any of **you** ever **been a party** (either as a plaintiff or as a defendant) to any lawsuit, civil or criminal?

   If so, were you a plaintiff or a defendant?

   What was the nature of the case?

   Is there anything about that experience that would compromise your ability to decide the matters in issue in this case fairly and impartially, solely on the basis of the evidence I admit during this trial and the law as I instruct you in it?

4. Has anyone in **your immediate family** ever been a **_party_** to a lawsuit, civil or criminal?

5. Have any of **you** ever **given testimony** in any kind of trial?

19

6. Have **you**, or anyone in **your immediate family, attended law school** or had any other **training in the law?**

Have you received any <u>training or instruction in issues related to discrimination, harassment, or retaliation in employment</u> or work-related settings?

If so, will you put whatever knowledge of the law you may have acquired before today out of your mind during this trial, and will you promise to apply only those legal principles in which I instruct you, and to construe them during your deliberations only as I explain them?

7. **Have you, or anyone in your immediate family, had any work experience in the law**, in any court, in a law firm, or in a law-related business?

8. Do any of you believe that a person's **race or national origin** makes it more or less likely that the person is telling the **truth**?

9. Do any of you __not__ understand that **being fair and impartial** as a juror means, among other things:

> **not** bringing any **biases or preconceptions** to your work,

> but, instead, **approaching at the outset the testimony of each witness** and the arguments of each lawyer on exactly the **same terms**,
> so that you do <u>not</u> tend to <u>credit or discredit anyone</u> simply because of their status, or what work they do, or where they were born, or how they speak.

10.  Do any of you <u>not</u> understand that in legal theory a person of <u>any</u> race could be the victim of discrimination based on race?

11.  Have any of you, or any member of your immediate family, ever been employed by or done any work for the Peralta Community College District or any of its colleges or facilities?

12. Have any of you ever been employed by or done any work for any college or any institution of higher learning?

13. Have any of you, or any member of your immediate family, served as a member of a board of trustees or board of directors of any educational institution?

14.  Have any of you, or any member of your immediate family, ever attended any college that is part of the Peralta Community College District?

15. Have any of you, or any member of your immediate family, ever had any interaction with any college in the Peralta Community College District or any employee of any of these colleges?

16. Have any of you, or any member of your immediate family, been terminated for cause or demoted from any job, i.e., terminated or demoted involuntarily and not simply because of a reduction in force or a reorganization by your employer?

    If so, do you believe you were terminated unfairly?

    What did the unfairness consist of?

17. Have any of you ever participated in a decision to terminate anyone's employment?

18. Have any of you, any member of your immediate family, <u>or any co-worker or close friend</u>, been a victim in the workplace of discrimination based on race or gender?

19. Have any of you, or any member of your immediate family, been the victim of any adverse treatment or retaliation by an employer because of views you expressed or tried to express?

22

20. Have any of you, or any member of your immediate family, been publicly defamed or slandered?

21. Has a former employer done anything with respect to any of you, or any member of your immediate family, to interfere with your efforts to get a job, or done anything to make it more difficult for you to get or keep a job?

**Final, catch-all question**:

22. Is there **any reason**,
arising out of any matter about which I have not asked any questions here today,
that any of you would **not be able to serve fairly and impartially** as a juror in this case?

23

If I excuse any prospective jurors for cause, <u>replace</u> them [with the juror next in order on the court's randomized list] and have the replacement jurors <u>begin by answering aloud the background questions</u> on sheets we have handed out.

**Then ask** the replacement juror if he/she **would have answered "yes"** to any of the questions posed to jurors in the box.

    If so, ask appropriate follow-up questions.

_____

**Once I am satisfied that the 14 jurors in the box appear to be qualified to serve in this case,**

**I ask counsel to approach the bench:**

    **--- inquire if there is a <u>need for additional questions</u>, by the court or by counsel.**

    **—--- if not, or after such questions, ask counsel (in sidebar) whether they <u>move to exclude any prospective jurors for cause</u>.]**

    **Any <u>EXCUSALS FOR CAUSE MUST BE EXPLAINED ON THE RECORD</u>.**

24

Once there are 14 jurors in the box who are not subject to being excused for cause, begin the **peremptory challenge** process.

The **peremptory challenge process:**

> Have the courtroom deputy prepare a fresh list of the 14 jurors, then give it to plaintiff's counsel, who will (in private) exercise the first peremptory challenge. Then have the deputy carry the paper over to defense counsel, who will exercise their first peremptory challenge. Continue this process until each side has exhausted its three (3) peremptory challenges.

**The jury consists of the first EIGHT (8)** jurors, working up from the lowest numbered juror, who remain after the peremptory challenges have been exercised.

**Thank and excuse remaining prospective jurors.**

**Clerk administers the final oath to the jurors who will hear the evidence.**

**I give the "opening" instructions or, if we recess, the generic instruction about conduct as jurors.**