1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

10   JOHN FREDERIC GARMON,

11          Plaintiff,                                    Civil Case No. C-04-3772 WDB

12          v.                                            **COURT'S [PROPOSED] OPENING
13                                                        JURY INSTRUCTIONS**
     PERALTA COMMUNITY
14   COLLEGE DISTRICT, et al

15          Defendant.
16   _____/

17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

1.    DUTY OF JURY

2.    COURT'S QUESTIONS TO WITNESSES

3.    CLAIMS AND DEFENSES

4.    BURDEN OF PROOF

5.    WHAT IS EVIDENCE

6.    WHAT IS NOT EVIDENCE

7.    EVIDENCE FOR LIMITED PURPOSE

8.    DIRECT AND CIRCUMSTANTIAL EVIDENCE

9.    CREDIBILITY OF WITNESSES

10.   OPINION EVIDENCE (EXPERT WITNESSES)

11.   DEPOSITIONS

12.   RULINGS ON OBJECTIONS

13.   JUROR QUESTIONS

14.   TRANSITIONAL INSTRUCTION

15.   FEDERAL CLAIM -- DISCRIMINATION BASED ON RACE – GENERALLY

16.   FEDERAL CLAIM -- DISCRIMINATION BASED ON RACE – ELEMENTS AND BURDEN OF PROOF

17.   FEDERAL CLAIM -- DISCRIMINATION BASED ON GENDER -- GENERALLY

18.   FEDERAL CLAIM -- DISCRIMINATION BASED ON GENDER – ELEMENTS AND BURDEN OF PROOF

19.   FEDERAL CLAIM – RETALIATION

20.   DISCRIMINATION AND RETALIATION -- DEFINITION OF "A MOTIVATING FACTOR"

21.   CALIFORNIA STATE LAW -- DEFAMATION – ELEMENTS

22.   CAUSATION -- GENERALLY

23.   DAMAGES -- INTRODUCTORY INSTRUCTION

24.   DAMAGES -- COMPENSATORY DAMAGES FOR EMOTIONAL DISTRESS

25.   DAMAGES -- SPECULATIVE DAMAGES NOT PERMITTED

26.   DAMAGES FOR DEPRIVATION OF FEDERAL CIVIL RIGHTS -- ACTUAL OR NOMINAL DAMAGES

27.   CALIFORNIA LAW – DAMAGES IN DEFAMATION CLAIMS

28.   CALIFORNIA LAW – DAMAGES -- DEFAMATION -- PUNITIVE DAMAGES

29.   DAMAGES – MITIGATION

**30.    CONDUCT OF THE JURY**
**31.    NO TRANSCRIPT AVAILABLE TO JURY**
**32.    TAKING NOTES**
**33.    BENCH CONFERENCES AND RECESSES**
**34.    OUTLINE OF TRIAL**
**35.    SPECIAL INTERROGATORIES**
**36.    CONCLUDING OPENING INSTRUCTION**

# 1. DUTY OF JURY

Ladies and gentlemen:  Now that you are the jury in this case, I want to take a few minutes to tell you something about your duties as jurors and to give you some instructions.

At the end of the trial I will give you instructions again.  These final instructions might cover some matters that are not addressed in these opening instructions.  Those final instructions will be controlling during your deliberations.

After you have heard all the evidence and the closing arguments I also will give you a set of questions, called "Special Interrogatories," that you will answer to render your verdict.  These Special Interrogatories will help assure that you understand the applicable legal principles and that you address the issues in the sequence the law requires.

It will be your duty to decide from the evidence what the facts are.  You, and you alone, are the judges of the facts.  You will hear the evidence, decide what the facts are, and then apply the law that I will give you to those facts.  That is how you will reach your verdict.  In doing so, you must follow that law whether you agree with it or not.

You should not take anything I may say or do during the trial as indicating what I think of the evidence or what I think your verdict should be.

# 2. COURT'S QUESTIONS TO WITNESSES

During the course of a trial, I may occasionally ask questions of a witness in order to clarify something.  Do not assume that I hold any opinion on the matters about which I pose questions. Remember that you, as jurors, are the sole judges of the facts of this case.

### 3. CLAIMS AND DEFENSES

To help you follow the evidence, I now will give you a brief summary of the parties' positions.  This summary is for your general guidance and is not evidence.

As I told you during the jury selection process, the plaintiff in this case is John Garmon.  The defendants are Peralta Community College District, Peralta Community College District Board of Trustees, and Darryl Moore.

John Garmon is an individual who was employed as the President of Vista Community College in Berkeley, California.  Vista is now called Berkeley City College.  However, in these proceedings, we refer to the college as Vista Community College.  Dr. Garmon resides in Berkeley, California and currently teaches at the College of Alameda.

Peralta Community College District ("Peralta") is a governmental entity that maintains and operates four community colleges in the Bay Area including Vista College.

Peralta Community College District Board of Trustees ("the Board") is the entity that administers business on behalf of Peralta.  The Board is made up of 7 members, called "trustees."  The people who sit on the Board make decisions about how to run Peralta.

Darryl Moore is an individual and, during the period relevant to this case, was employed as a trustee on the Peralta Community College District Board of Trustees.  Mr. Moore currently resides in Berkeley, California.  Mr. Moore is no longer a member of the Peralta Community College District Board of Trustees and is now a member of the Berkeley City Council.

Dr. Garmon began employment as President of Vista on July 1, 2001.  Dr. Garmon alleges that on May 11, 2004, the Board voted not to renew his contract as President of Vista College.

In this trial, Dr. Garmon asserts four claims, three of which are based on federal law and one of which is based on state law.  He asserts the three federal law claims

against the District and its Board of Trustees, not against Mr. Moore.  He asserts the state law claim only against Mr. Moore, not against the District or its Board of Trustees.

In the federal claims, Dr. Garmon alleges that the District and its Board discriminated against him on the basis of race and gender and retaliated against him for speaking out against what he alleges were racially motivated employment decisions.  In the one state law claim, Dr. Garmon alleges that Mr. Moore defamed him in statements made to the press.

In his federal claim for race discrimination, Dr. Garmon alleges that his race, Caucasian, was a substantial factor in the Board's decision not to renew his contract to serve as President of Vista College.

In his federal claim for gender discrimination, Dr. Garmon alleges that his gender, that is, the fact that he is male, was a substantial factor in the Board's decision not to renew his contract to serve as President of Vista College.

In his federal claim for retaliation, Dr. Garmon alleges that he complained that, in his view, the Board favored African-American applicants over applicants of other races when recruiting and hiring for positions related to the community colleges, and he alleges that the Board voted not to renew his contract in retaliation for his opposition to the practices that he believed were discriminatory.

In his claim for defamation under California law, Dr. Garmon alleges that Mr. Moore told the media that Dr. Garmon's contract was not renewed because Dr. Garmon performed poorly as Vista President and that the statements by Mr. Moore were false and defamatory.

Defendants deny Dr. Garmon's claims and dispute his version of the facts. Defendants contend that neither Dr. Garmon's race nor his gender was a factor in the Board's decision not to renew Dr. Garmon's contract to serve as President of Vista. Defendants also contend that they did not retaliate against Dr. Garmon and, further, that the Board did not renew Dr. Garmon's contract for lawful reasons.  Finally, defendant Moore asserts that he did not defame Dr. Garmon.

**4. BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE**

The law requires the party asserting a claim or presenting an affirmative defense to prove each fact that is essential to that party's claim or defense.  In civil cases, like this one, the standard that a party usually must satisfy in order to "prove" any given fact is called "preponderance of the evidence."

To satisfy this standard, the party must persuade you, when you properly consider all the evidence that has been admitted during the trial, that the fact is more probably true than not true.

In making this determination, you must consider all the evidence – regardless of who presented it.

Unless the Court directs you that Dr. Garmon must meet a more exacting burden with respect to a specific element of a claim, Dr. Garmon has the burden of proving by a preponderance of the evidence all of the facts necessary to establish the essential elements of his claims.  In addition, Dr. Garmon has the burden of proving by a preponderance of the evidence all facts necessary to establish the nature and extent of the injuries he claims to have suffered, and the amount of money damages needed to compensate him for those injuries.

**5. WHAT IS EVIDENCE**

The evidence from which you are to decide what the facts are consists of:

1.    the sworn testimony of witnesses, on both direct and cross-examination, regardless of who calls the witness;

2.    the exhibits that are received into evidence;

3.    facts on which all the parties agree (that is, facts to which all parties stipulate); and

4.    other facts, if any, that I order you to accept as established.

### 6. WHAT IS NOT EVIDENCE

The following things are <u>not</u> evidence, and you must not consider them as evidence in deciding what the facts are in this case:

1.      statements or arguments by the attorneys;

2.      questions or objections by the attorneys;

3.      testimony that I instruct you to disregard;

4.      anything you may see or hear when the court is not in session, even if what you see or hear is done or said by one of the parties or by one of the witnesses.

### 7. EVIDENCE FOR LIMITED PURPOSE

Some evidence may be admitted for a limited purpose only.  If I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other purpose.

### 8. DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.

Direct evidence sheds light directly on whether a disputed fact is true or not true. For example, testimony by a witness about what that witness actually saw or did could be direct evidence.

Circumstantial evidence is proof of one or more facts from which you could find another fact.

You should consider both kinds of evidence.  The <u>law</u> makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for <u>you</u> to decide how much weight to give any evidence.

# 9. CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.    the opportunity and ability the witness had to see or hear or know the things about which the witness testifies;

2.    the quality and clarity of the witness' memory;

3.    the witness' manner while testifying;

4.    the witness' interest, if any, in the outcome of the case, and any bias or prejudice the witness might have;

5.    whether other evidence contradicted the witness' testimony;

6.    the reasonableness of the witness' testimony in light of all the evidence; and

7.    any other factors that bear on believability.


The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify to that fact.



# 10. OPINION EVIDENCE (EXPERT WITNESSES)

You may hear testimony from persons who, because of education or experience, are permitted to state opinions and the reasons for their opinions.

Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, in whole or in part, and may give it as much weight as you think it deserves, considering the witness' education and experience, the reasons given for the opinion, and all the other evidence in the case.

## 11. DEPOSITIONS

A deposition is the sworn testimony of a witness taken before trial. Just like witnesses who testify in person during the trial, the witness at a deposition is placed under oath to tell the truth, and lawyers for each party may ask questions. The questions and answers are recorded.

Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify.

If deposition testimony is read to you, you must not place any significance on the behavior or tone of voice of any person reading the questions or answers.

## 12. RULINGS ON OBJECTIONS

There are rules of evidence which control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that what is being asked or offered is not admissible under the rules of evidence, that lawyer may object.

If I overrule the objection, the question may be answered or the exhibit received.

If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the evidence which I told you to disregard.

# 13. JUROR QUESTIONS

While it is not customary for a juror to pose a question to a witness, the court has the discretion to decide whether a question a juror has should be put to a witness.

If you wish to have a question posed to a witness, do not seek to interrupt a lawyer's examination. Instead, make a note of the question and pay attention to the rest of the questions and answers that are forthcoming while the witness is on the stand. There is a substantial likelihood that a lawyer will ask the question you have in mind sometime before all the examination (direct, cross, and re-direct) of the witness has been completed -- or that the witness' additional testimony will provide you with the information you wanted.

If you still wish to have the question posed after all the examination of the witness has been completed, write the question on a piece of paper, fold the paper over so the question is not visible, raise your hand, and submit the question for my consideration. Do not disclose the question to anyone else – and do not discuss it, or what makes you want to ask it, with anyone else, including, of course, any of the other jurors. Please keep in mind that you are not to discuss the evidence or the case with other jurors until the end of the trial when I instruct you to commence your deliberations.

Before deciding whether I will pose the question to the witness, I may consult with the attorneys.

If I conclude that posing the question to the witness would be consistent with the rules of evidence and otherwise appropriate, I will pose the question for you.

# 14. TRANSITIONAL INSTRUCTION

I will now give you some instructions about the law that applies to the parties' specific claims. I will give you more detailed instructions about the law that applies to each specific claim near the end of the trial.

## 15. FEDERAL CLAIM -- DISCRIMINATION BASED ON RACE
## – GENERALLY

Dr. Garmon has brought a claim of employment discrimination against defendants Peralta and the Board (collectively referred to as "Peralta").  Dr. Garmon claims that his race was a motivating factor in defendants' decision not to renew his contract to serve as President of Vista.  Defendants deny that Dr. Garmon's race was a motivating factor in their decision not to renew plaintiff's contract.  Defendants further contend that the decision not to renew Dr. Garmon's contract was based upon lawful reasons.


## 16. FEDERAL CLAIM -- DISCRIMINATION BASED ON RACE
## – ELEMENTS AND BURDEN OF PROOF

At this juncture I will describe for you the sequence of the issues that arise under Dr. Garmon's claim that his race was a motivating factor in Peralta's decision not to renew his contract as the President of Vista Community College.

Because Dr. Garmon is the plaintiff, the law places the burden on him with respect to the first issue in this sequence.  Thus, at the outset of the sequence, it will be Dr. Garmon's burden to try to prove, by a preponderance of the evidence, that his race was a motivating factor in Peralta's decision not to renew his contract.

If Dr. Garmon fails to prove that his race was a motivating factor in defendants' decision not to renew his contract as Vista's President, your verdict on this claim must be for defendants.

If Dr. Garmon proves that his race was a motivating factor in the decision, you may consider evidence about whether there were other motivating factors for that decision as well.

The law places the burden on the defendants (Peralta) to prove, by a preponderance of the evidence, that there were other motivating factors in their decision and that those factors were lawful.

If defendants prove that there were any such other motivating factors in their decision, then the law gives the defendants an opportunity to try to prove that, given the other motivating factors, they would have decided not to renew Dr. Garmon's contract even if Dr. Garmon's race had not been a motivating factor.  In other words, the law gives the defendants an opportunity to try to prove that they would have made the same decision anyway, independent of any role his race played in the matter.

So, if the defendants prove that there were other lawful motivating factors in the decision, you will proceed to determine whether defendants also prove that, because of those motivating factors, they would have decided not to renew Dr. Garmon's contract even if his race had not been any kind of factor at all.

## 17.  FEDERAL CLAIM -- DISCRIMINATION BASED ON GENDER – GENERALLY

Dr. Garmon has brought a second claim of employment discrimination against defendants.  Dr. Garmon claims that his sex -- the fact that he is male -- was a motivating factor in defendants' decision not to renew his contract.  Defendants deny that Dr. Garmon's sex was a motivating factor in their decision not to renew plaintiff's contract. Defendants further contend that the decision not to renew Dr. Garmon's contract was based upon lawful reasons.

## 18. FEDERAL CLAIM -- DISCRIMINATION BASED ON GENDER – ELEMENTS AND BURDEN OF PROOF

At this juncture I will describe for you the sequence of the issues that arise under Dr. Garmon's claim that his sex was a motivating factor in Peralta's decision not to renew his contract as the President of Vista Community College.

Because Dr. Garmon is the plaintiff, the law places the burden on him with respect to the first issue in this sequence.  Thus, at the outset of the sequence, it will be Dr. Garmon's burden to try to prove, by a preponderance of the evidence, that his sex was a motivating factor in Peralta's decision not to renew his contract.

If Dr. Garmon fails to prove that his sex was a motivating factor in defendants' decision not to renew his contract as Vista's President, your verdict on this claim must be for defendants.

If Dr. Garmon proves that his sex was a motivating factor in the decision, you may consider evidence about whether there were other motivating factors for that decision as well.

The law places the burden on the defendants (Peralta) to prove, by a preponderance of the evidence, that there were other motivating factors in their decision and that those factors were lawful.

If defendants prove that there were any such other motivating factors in their decision, then the law gives the defendants an opportunity to try to prove that, given the other motivating factors, they would have decided not to renew Dr. Garmon's contract even if Dr. Garmon's sex had not been a motivating factor.  In other words, the law gives the defendants an opportunity to try to prove that they would have made the same decision anyway, independent of any role his sex played in the matter.

So, if the defendants prove that there were other lawful motivating factors in the decision, you will proceed to determine whether defendants also prove that, because of those motivating factors, they would have decided not to renew Dr. Garmon's contract even if his sex had not been any kind of factor at all.

14

# 19. FEDERAL CLAIM – RETALIATION

Federal law prohibits an employer from retaliating against an employee because the employee opposed decisions or practices that the employee reasonably believed were motivated by race discrimination.

One of Dr. Garmon's claims in this case is that one of the motivating factors in Peralta's decision not to renew his contract was a desire to retaliate against him for opposing employment decisions or practices by Peralta that Dr. Garmon thought were motivated by racial discrimination.

In proceeding with this claim, Dr. Garmon has the burden of proving each of the following elements:

1.    That he expressed opposition to decisions or practices by Peralta on the ground that they were motivated by racial discrimination,

2.    That it was reasonable, given all the circumstances, for him to believe that the decisions or practices to which he expressed opposition were motivated by racial discrimination,

3.    That the opposition he expressed to decisions or practices that he reasonably believed were discriminatory was a motivating factor in Peralta's decision not to renew his contract.

If Dr. Garmon fails to prove any one of these elements, then your verdict on the retaliation claim must be for defendants.

On the other hand, if Dr. Garmon proves these required elements, you would proceed to consider any evidence about whether there were additional motivating factors in defendants' decision that were lawful.

Defendants would have the burden of proving, by a preponderance of the evidence, that there were other motivating factors in their decision and that those factors were lawful.

If defendants were to prove that there were other motivating factors – that were lawful – in their decision not to renew the contract, then the law would permit the

1   defendants to try to prove that, because of those other factors, the defendants would have
2   decided not to renew Dr. Garmon's contract even if the defendants had not taken Mr.
3   Garmon's opposition to practices that he believed were discriminatory into account when
4   they were making their decision.

5
6
7   **20.  DISCRIMINATION AND RETALIATION**
8   **-- DEFINITION OF "A MOTIVATING FACTOR"**

9        The issue of whether an unlawful purpose was a motivating factor in the decision
10  not to renew Dr. Garmon's contract as Vista's President arises under each of Dr.
11  Garmon's federal claims.

12       The law requires you to apply the following principles when you decide whether
13  Dr. Garmon has met his burden of proving that any particular unlawful purpose was "a
14  motivating factor" in Peralta's decision.

15       To meet this burden, Dr. Garmon is not required to prove that any given unlawful
16  purpose (race, gender, or retaliation) was the <u>only</u> motivating factor in Peralta's decision,
17  or even that the alleged unlawful purpose was the <u>primary</u> motivating factor in the
18  decision.

19       Instead, what the law requires is that Dr. Garmon prove (by a preponderance of
20  the evidence) that the particular alleged unlawful consideration was at least one of the
21  motivating factors in Peralta's decision.

22
23
24
25  **21.  CALIFORNIA STATE LAW -- DEFAMATION – ELEMENTS**

26       The fourth claim that Dr. Garmon brings in this case is only against Mr. Moore
27  (not the District or its Board of Trustees) and is for defamation.

28       Dr. Garmon claims that he was defamed by Mr. Moore when Mr. Moore gave a
    newspaper reporter false reasons for Peralta's decision not to renew Dr. Garmon's

contract – and those false reasons reflected badly on Dr. Garmon's competence and job performance.

The statements that Dr. Garmon asserts that Mr. Moore made obviously reflect badly on Dr. Garmon's competence and job performance. You will address other issues when you decide whether Dr. Garmon has proved his defamation claim.

To proceed with his defamation claim against Mr. Moore in the setting of this case, Dr. Garmon must prove each of the following three things <u>by a preponderance of the evidence</u>:

1.    That Mr. Moore made one or more of the statements in question to someone other than Dr. Garmon,

2.    That the person to whom Mr. Moore spoke reasonably understood that the statement or statements were about Dr. Garmon, and

3.    That the statement or statements were false.

If Dr. Garmon fails to prove any one of these elements, you must enter judgment on this claim in favor of Mr. Moore.

If Dr. Garmon proves all three of the above elements by a preponderance of the evidence, you will proceed to the next issue.

This next issue is whether, at the time he made the statements, Mr. Moore either (1) knew they were false or (2) had serious doubts about the truth of the statements. To prevail on his defamation claim, Dr. Garmon has the burden of proving either that Mr. Moore knew the statements were false or that he had serious doubts about their truth.

Moreover, the law imposes on Dr. Garmon a more demanding burden of proof as to this last issue. The burden of proof as to this last issue is not "preponderance of the evidence," but the <u>higher standard of "clear and convincing evidence.</u>" To satisfy this higher standard, the evidence on which Dr. Garmon relies must persuade you that it is <u>highly probable</u> that Mr. Moore either knew the statements were false or had serious doubts about their truth.

17

## 22. CAUSATION – GENERALLY

In a moment, I will give you instructions about damages.  Before I give you those instructions, however, I will instruct you about the concept of "causation."

If Dr. Garmon proved that conduct by a defendant violated Dr. Garmon's rights under federal or state law, you will be called upon to determine whether Dr. Garmon also proved that the wrongful conduct "caused" Dr. Garmon to suffer the harm he claims.

Dr. Garmon has the burden of proving "causation" -- which he must establish by a preponderance of the evidence.  Under the law, damages are "caused" by an act when Dr. Garmon proves that the act was a substantial factor in bringing about the damages he claims.

## 23. DAMAGES -- INTRODUCTORY INSTRUCTION

If you conclude that Dr. Garmon has proved that wrongful conduct by a defendant caused Dr. Garmon to suffer injury, loss, or harm, you will proceed to determine what amount of damages Dr. Garmon has proved he is entitled to recover.  For most of the kinds of harms he claims to have suffered, Dr. Garmon has the burden of proving damages by a preponderance of the evidence.  Damages means the amount of money that will reasonably and fairly compensate Dr. Garmon for any injury you find was caused by action by a defendant that you found to be wrongful.

You must determine the amount of the damages to be awarded according to the evidence and the instructions in the law that I will give you on the subject of damages.

You may not include in compensatory damages any amounts for the purpose of punishing a defendant or setting an example.

With respect to his claims for race discrimination, gender discrimination and retaliation, Dr. Garmon is claiming compensatory damages for emotional distress, pain and suffering, inconvenience, and mental anguish.

With respect to his claim for defamation, Dr. Garmon is seeking compensation for emotional and economic harms and for damage to his reputation.

## 24. DAMAGES -- COMPENSATORY DAMAGES
## FOR EMOTIONAL DISTRESS

A category of damages that Dr. Garmon is claiming in this case is compensatory damages for "emotional distress."

The term "emotional distress" means mental or emotional distress, suffering, or anguish.  It includes all unpleasant mental or emotional reactions, such as fright, nervousness, grief, anxiety, worry, mortification, shock, humiliation and indignity, as well as physical pain.

You must award reasonable compensation for emotional distress if you find that damages of these kinds were caused in the past, or are reasonably certain to be caused in the future, by actions by a defendant that you have concluded violate Dr. Garmon's rights.

No exact standard exists for fixing the compensation to be awarded for this element of damages.  Nor is the opinion of any witness required about the amount of compensation that would be reasonable for this kind of damages.  It is impossible to present direct evidence of the monetary value of such an intangible as emotional distress.  But that fact is not a bar to recovery by Dr. Garmon for these kinds of harms.  It is your responsibility, as the jury, to determine what amount of monetary damages constitutes fair compensation for these kinds of harms -- and then to award that amount, no more and no less.

If the ways you resolve the issues about the lawfulness of a defendant's conduct and about causation make it appropriate for you to determine the amount of money that Dr. Garmon should be awarded for these kinds of damages, you should take into account the nature, character, and seriousness of any emotional distress that Dr. Garmon proved he experienced as a result of defendant's wrongful conduct.  You must consider the extent and duration of any such damages, as any award you make must cover Dr. Garmon's damages since the wrongdoing, to the present time, and even into the future -- if you find that the proofs presented support a conclusion that Dr. Garmon's emotional

stress and its consequences have continued to the present time or can reasonably be expected to continue in the future.

### 25. DAMAGES -- SPECULATIVE DAMAGES NOT PERMITTED

You may not award Dr. Garmon speculative damages, which means compensation for future loss or harm which, while possible, is not reasonably certain to occur.

However, if Dr. Garmon proves that wrongful conduct by a defendant will cause him to suffer damages in the future, you should compensate Dr. Garmon for all the loss or harm that he proves he is reasonably certain to suffer in the future.

### 26. DAMAGES FOR DEPRIVATION OF FEDERAL CIVIL RIGHTS -- ACTUAL OR NOMINAL DAMAGES

If you find for the plaintiff on any of his <u>federal</u> claims (that is, his claim for race discrimination, gender discrimination or retaliation), but you find that the plaintiff has failed to prove actual damages (that is, that he suffered compensable harm), you must return an award on that claim of nominal damages of one dollar ($1.00).

### 27.  CALIFORNIA LAW – DAMAGES IN DEFAMATION CLAIMS

If Dr. Garmon satisfies all the requirements for establishing a defamation claim, the jury will proceed to consider issues related to damages.

I will give the jury detailed instructions about damages after all the evidence has been presented.  For now, there are just a few principles about the damages aspect of the case that you need to understand.

1    For most of the kinds of defamation damages that Dr. Garmon is claiming he will

2    be required to prove that he suffered the harms for which he seeks compensation and that

3    defamatory conduct was a substantial factor in bringing about (causing) those harms.

4    Dr. Garmon is claiming that, among other things, he suffered both emotional and

5    economic harm as a result of the publication of Mr. Moore's words.  So, during the

6    course of the trial, you may hear evidence related to the parties' dispute about how the

7    publication of Mr. Moore's words affected Dr. Garmon's emotions, how it affected his

8    reputation, and how it affected his income and expenses.

9

10

## 28.  CALIFORNIA LAW – DAMAGES -- DEFAMATION
## -- PUNITIVE DAMAGES

13   As part of his defamation claim, Dr. Garmon also seeks a category of damages

14   called "punitive damages" as against Mr. Moore.

15   Dr. Garmon may recover damages to punish Mr. Moore if Dr. Garmon  proves **by**

16   **clear and convincing evidence** that Mr. Moore acted with malice, oppression, or fraud

17   when he made the statements, if any, that you determine to be defamatory.

18   "Clear and convincing evidence" is a more exacting standard of proof than

19   "preponderance of the evidence."   In order to satisfy this more exacting standard,

20   plaintiff must persuade you that it is highly probable that this fact is true.

21

22   "Malice" means that Mr. Moore acted with intent to cause injury or that Mr.

23   Moore's conduct was despicable and was done with a willful and knowing disregard of

24   the rights or safety of another.  A person acts with knowing disregard when he or she is

25   aware of the probable dangerous consequences of his or her conduct and deliberately

26   fails to avoid those consequences.

27   "Oppression" means that Mr. Moore's conduct was despicable and subjected Dr.

28   Garmon to cruel and unjust hardship in knowing disregard of his rights.

"Despicable conduct" is conduct that is so mean, vile, based, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that Mr. Moore intentionally misrepresented or concealed a material fact and did so intending to deprive Dr. Garmon of property or of a legal right or otherwise to cause him injury.

## 29.  DAMAGES – MITIGATION

The plaintiff has a duty to use reasonable efforts to mitigate damages.  To mitigate means to avoid or reduce damages.

Defendants have the burden of proving by a preponderance of the evidence:

1.    That Dr. Garmon failed to use reasonable efforts to mitigate damages,

2.    The amount by which damages would have been mitigated if Dr. Garmon had used reasonable efforts to mitigate damages.

## 30. CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, do not talk to each other about this case or about anyone who has anything to do with it until the end of the case when you go to the jury room to decide on your verdict.

Second, do not talk with anyone else about this case, or about anyone who has anything to do with it, until the trial has ended and you have been discharged as jurors. "Anyone else" includes members of your family and your friends.  You may tell them that you are a juror, but don't tell them anything about the case until after you have been discharged by me.

Third, do not let anyone talk to you about the case or about anyone who has anything to do with it.  If someone should try to talk to you about the case, please report it to me immediately.

Fourth, do not read any news stories or articles, or listen to any radio or television reports, about the case or about anyone who has anything to do with it.

Fifth, do not do any research into matters related to the case, such as consulting dictionaries or other reference materials, and do not make any investigation about the case on your own.

Sixth, if you need to communicate with me, simply give a signed note to the courtroom deputy or law clerk to give to me.

Seventh, do not make up your mind about what the verdict should be until after <u>all</u> the evidence and arguments have been presented and you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence. Keep an open mind until then.

## 31. NO TRANSCRIPT AVAILABLE TO JURY

At the end of the trial, you will have to make your decisions based on the documents that have been admitted into evidence and your recollection of the testimony. You will not have a written transcript to consult, and it is difficult and time-consuming for the reporter to read back lengthy testimony.  I therefore urge you to pay close attention to the testimony as it is given.

## 32. TAKING NOTES

If you wish, you may take notes to help you remember what witnesses say.

If you take notes, keep them to yourself until, at the end of the trial, you and your fellow jurors go to the jury room to begin your deliberations.

Do not let note-taking distract you so that you do not hear other answers by witnesses.

When you leave, your notes must be left in an envelope in the jury room.

1   Whether or not you take notes, you should rely on your own memory of what was

2   said.  Notes are only to assist your memory.

3

4

5   ### 33. BENCH CONFERENCES AND RECESSES

6   From time to time during the trial it may become necessary for me to talk with the

7   attorneys out of the hearing of the jury, either by having a conference at the bench when

8   the jury is present in the courtroom, or by calling a recess.  Please understand that while

9   you are waiting, we are working.   The purpose of such conferences is not to keep

10  relevant and admissible information from you, but to enable me to decide how certain

11  matters are to be treated under the rules of evidence and to avoid confusion and error.

12  We will do our best to keep the number and length of these conferences to a

13  minimum.

14  I may not always grant an attorney's request for a conference.  Do not consider my

15  granting or denying a request for a conference as any indication of my opinion of the

16  case or of what your verdict should be.

17

18

19  ### 34. OUTLINE OF TRIAL

20  I will now give you a brief and general outline of the trial process, which is about

21  to begin.

22  First, each side will be given an opportunity to make an opening statement.  An

23  opening statement is <u>not evidence</u>.  It is simply an <u>outline</u> to help you understand what

24  that party expects the evidence to be.

25  After the opening statements, counsel for Dr. Garmon will present evidence --

26  witnesses and exhibits -- and counsel for defendants may cross-examine Dr. Garmon's

27  witnesses.  Then defendants' counsel will present evidence (witnesses and exhibits), and

28  counsel for Dr. Garmon may cross-examine defendants' witnesses.

1    After the evidence has been presented, I will instruct you in the law that applies

2  to the case.  Immediately thereafter, the lawyers will make their closing arguments.

3    You will then decide the case.

4

5

6  ## 35. SPECIAL INTERROGATORIES

7    Your verdict in this case will be presented in the form of answers to questions that

8  are called "Special Interrogatories."

9    This set of questions is specific to this case -- meaning, the questions are based on

10  the specific legal principles that apply to the particular claims and defenses raised by Dr.

11  Garmon and defendants.

12    I will give you this set of questions after all the evidence has been presented and

13  before you begin your deliberations.

14    I have structured these questions carefully to make sure that you address the issues

15  exactly as the law defines them and that you do so in the appropriate order.  You must

16  follow the instructions that accompany the Special Interrogatories carefully, and you

17  must address the Interrogatories in the order presented.  By following the instructions

18  and answering the interrogatories as posed, you will cover all the issues that the law

19  requires you to cover in this case and you will avoid confusion.

20

21  ## 36. CONCLUDING OPENING INSTRUCTION

22    I have now concluded my preliminary instructions.  Remember, I will instruct you

23  in the relevant law again after the presentation of the evidence.

24

25    Plaintiff's counsel will now make her opening statement.

26

27

28