1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN FREDERIC GARMON,

       Plaintiff,

    v.

PERALTA COMMUNITY
COLLEGE DISTRICT, et al

       Defendant.
_____/

Civil Case No. C-04-3772 WDB

**COURT'S CLOSING JURY
INSTRUCTIONS**

# **TABLE OF CONTENTS**

**1.     DUTY OF JURY**
**2.     COURT'S QUESTIONS TO WITNESSES**
**3.     BURDEN OF PROOF**
**4.     WHAT IS EVIDENCE**
**5.     WHAT IS NOT EVIDENCE**
**6.     DIRECT AND CIRCUMSTANTIAL EVIDENCE**
**7.     CREDIBILITY OF WITNESSES**
**8.     DEPOSITIONS**
**9.     RULINGS ON OBJECTIONS**
**10.    USE OF NOTES**
**11.    SPECIAL INTERROGATORIES**
**12.    FINAL INTRODUCTORY INSTRUCTION**
**13.    FEDERAL CLAIMS – GENERALLY – DISTRICT RESPONSIBLE FOR CHANCELLOR'S ACTS AND DECISIONS**
**14.    FEDERAL CLAIM -- DISCRIMINATION BASED ON RACE – GENERALLY**
**15.    FEDERAL CLAIM -- DISCRIMINATION BASED ON RACE – ELEMENTS AND BURDEN OF PROOF**
**16.    FEDERAL CLAIM -- DISCRIMINATION BASED ON GENDER – GENERALLY**
**17.    FEDERAL CLAIM -- DISCRIMINATION BASED ON GENDER – ELEMENTS AND BURDEN OF PROOF**
**18.    FEDERAL CLAIM – RETALIATION**
**19.    DISCRIMINATION AND RETALIATION -- DEFINITION OF "A MOTIVATING FACTOR"**
**20.    CALIFORNIA STATE LAW -- DEFAMATION – ELEMENTS**
**21.    CAUSATION -- GENERALLY**
**22.    DAMAGES -- INTRODUCTORY INSTRUCTION**
**23.    DAMAGES -- COMPENSATORY DAMAGES FOR EMOTIONAL DISTRESS**
**24.    DAMAGES -- SPECULATIVE DAMAGES NOT PERMITTED**
**25.    DAMAGES FOR DEPRIVATION OF FEDERAL CIVIL RIGHTS -- ACTUAL OR NOMINAL DAMAGES**
**26.    CALIFORNIA LAW – THE DEFAMATION CLAIM DAMAGES – INTRODUCTION**
**27.    DEFAMATION – "GENERAL DAMAGES" -- TWO COMPONENTS**

**28.    DEFAMATION – SPECIAL DAMAGES**

**29.    DAMAGES -- PRESENT CASH VALUE**

**30.    DAMAGES – MITIGATION**

**31.    CALIFORNIA LAW – DAMAGES -- DEFAMATION-- PUNITIVE DAMAGES**

**32.    TRANSITIONAL INSTRUCTION**

**33.    COMMUNICATION WITH THE COURT**

**34.    DUTY TO DELIBERATE**

**35.    RETURN OF VERDICT**

# 1. DUTY OF JURY

Members of the jury, now that you have heard all the evidence, it is my duty to instruct you on the law which applies to this case.  Copies of these instructions will be available in the jury room for you to consult.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  You must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath promising to do so at the beginning of the case.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. You must not read into these instructions -- or into anything I have said or done -- any suggestion as to what verdict you should return -- that is a matter entirely up to you.

In these closing instructions I first will remind you of some general legal principles about evidence and procedural matters.  Then I will give you instructions tailored to the case at hand, instructions that will include descriptions of the legal elements of each claim, as well as definitions of key terms and phrases.

# 2. COURT'S QUESTIONS TO WITNESSES

During the course of trial, I sometimes asked questions of witnesses, in order to clarify testimony that I thought was unclear.  Do not assume that I hold any opinion on the matters about which I posed questions.  Remember that you, as jurors, are the sole judges of the facts of this case.

### 3. BURDEN OF PROOF

The law requires the party asserting a claim or presenting an affirmative defense to prove each fact that is essential to that party's claim or defense.  In civil cases, like this one, the standard that a party usually must satisfy in order to "prove" any given fact is called "preponderance of the evidence."

To satisfy this standard, the party must persuade you, when you properly consider all the evidence that has been admitted during the trial, that the fact is more probably true than not true.

In making this determination, you must consider all the evidence –  regardless of who presented it.

Unless the Court directs you that Dr. Garmon must meet a more exacting burden with respect to a specific element of a claim, Dr. Garmon has the burden of proving by a preponderance of the evidence all of the facts necessary to establish the essential elements of his claims.  In addition, unless otherwise stated, Dr. Garmon has the burden of proving by a preponderance of the evidence all facts necessary to establish the nature and extent of the injuries he claims to have suffered.

There are a few factual contentions that Dr. Garmon has made to which a more demanding burden of proof applies.  That burden is called "clear and convincing evidence."  We will identify for you in these instructions (and in the Special Interrogatories) the factual contentions to which this more demanding standard applies.

To satisfy this standard, Dr. Garmon must persuade you, when you have taken all the evidence into account, that it is "highly probable" that the particular factual contention is true.

# 4. WHAT IS EVIDENCE

The evidence from which you are to decide what the facts are consists of:

1.     the sworn testimony of witnesses, on both direct and cross-examination, regardless of who called the witness;

2.     the exhibits that were received into evidence; and

3.     facts on which all parties agreed (that is, facts to which all parties stipulated).

# 5. WHAT IS NOT EVIDENCE

The following things are <u>not</u> evidence, and you must not consider them as evidence in deciding what the facts are in this case:

1.     statements or arguments by the attorneys;

2.     questions or objections by the attorneys;

3.     testimony that I instructed you to disregard;

4.     anything you saw or heard when the court was not in session, even if what you saw or heard was done or said by one of the parties or by one of the witnesses.

# 6. DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.

Direct evidence sheds light directly on whether a disputed fact is true or not true. For example, testimony by a witness about what that witness actually saw or did could be direct evidence.

Circumstantial evidence is proof of one or more facts from which you could find another fact.

You should consider both kinds of evidence. The <u>law</u> makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for <u>you</u> to decide how much weight to give any evidence.

# 7. CREDIBILITY OF WITNESSES

In deciding the facts in this case, you will have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness said, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1. the opportunity and ability the witness had to see or hear or know the things about which the witness testified;

2. the quality and clarity of the witness' memory;

3. the witness' manner while testifying;

4. the witness' interest, if any, in the outcome of the case, and any bias or prejudice the witness might have;

5. whether other evidence contradicted the witness' testimony;

6. the reasonableness of the witness' testimony in light of all the evidence; and

7. any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testified to that fact.

## 8. DEPOSITIONS

A deposition is the sworn testimony of a witness taken before trial.  Just like witnesses who testified in person during the trial, the witness at a deposition was placed under oath to tell the truth, and lawyers for each party were permitted to ask questions.  The questions and answers were recorded.

Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify.

Deposition testimony was read to you.  You must not place any significance on the behavior or tone of voice of any person reading the questions or answers.

## 9. RULINGS ON OBJECTIONS

There are rules of evidence which control what can be received into evidence. When a lawyer asked a question or offered an exhibit into evidence, and a lawyer on the other side thought that what was being asked or offered was not admissible under the rules of evidence, that lawyer objected.

If I <u>overruled</u> the objection, the question was answered or the exhibit received.

If I <u>sustained</u> the objection, the question could not be answered, and the exhibit could not be received.  Whenever I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been.

If I ordered that some evidence be stricken from the record and that you disregard or ignore the evidence, then, when you are deciding the case, you must not consider the evidence that I told you to disregard.

## 10. USE OF NOTES

You may use notes taken during trial to assist your memory.  Notes, however, should not be substituted for your memory.

## 11. SPECIAL INTERROGATORIES

Before turning to instructions tailored to the specifics of the case at hand, I want to tell you a bit more about the set of questions, called "Special Interrogatories," that will serve as your guides during your deliberations.  We have structured these questions carefully to make sure that you address the issues exactly as the law defines them and that you do so in the appropriate order.  You must follow the instructions that accompany these Special Interrogatories carefully.  You must address the Interrogatories in the order presented.  By following the instructions and answering the Interrogatories as posed, you will cover all the issues that the law requires you to cover in this case and will avoid confusion.

You will note, by the way, that in some instances a certain answer to a particular question on which you are working will mean that you will skip one or more of the immediately following questions.  The instructions will tell you when this is the case, and will tell you which question to address next.

I also should emphasize here that each question requires a unanimous answer.  All jurors must agree about what the answer is to each question before you can answer that question.

## 12. FINAL INTRODUCTORY INSTRUCTION

I will now begin to give you instructions that set forth the standards you must apply to the parties' conduct to determine whether the law has been violated.

**13.  FEDERAL CLAIMS — GENERALLY —  DISTRICT RESPONSIBLE FOR CHANCELLOR'S ACTS AND DECISIONS**

As I instructed you before we began hearing evidence, Dr. Garmon makes four separate claims in this case.  Three of those claims are based on federal law.  The fourth claim by Dr. Garmon in this case is based on state law.

The three claims based on federal law are (1) that discrimination based on Dr. Garmon's race was a motivating factor in the decision not to renew his contract to serve as President of Vista Community College, (2) that discrimination based on his gender was a motivating factor in the decision not to renew that contract, and (3) that a motivating factor in the decision not to renew his contract was to retaliate against him for expressing opposition to personnel decisions and practices in the District that he believed reflected discrimination based on race.

Dr. Garmon makes these federal claims only against the District and its Board of Trustees — not against Mr. Moore individually.  Under the law that applies to the three federal claims, the District and its Board are responsible for acts and decisions by Chancellor Harris.   For purposes of the issues in this trial, Chancellor Harris and the District and its Board are one.

**14. FEDERAL CLAIM -- DISCRIMINATION BASED ON RACE – GENERALLY**

Dr. Garmon has brought a claim of employment discrimination against defendants Peralta and the Board (collectively referred to as "Peralta").  Dr. Garmon claims that his race was a motivating factor in defendants' decision not to renew his contract to serve as President of Vista.  Defendants deny that Dr. Garmon's race was a motivating factor in their decision not to renew plaintiff's contract.  Defendants further contend that the decision not to renew Dr. Garmon's contract was based upon lawful reasons.

## 15. FEDERAL CLAIM -- DISCRIMINATION BASED ON RACE
## – ELEMENTS AND BURDEN OF PROOF

At this juncture I will describe for you the sequence of the issues that arise under Dr. Garmon's claim that his race was a motivating factor in Peralta's decision not to renew his contract as the President of Vista Community College.

Because Dr. Garmon is the plaintiff, the law places the burden on him with respect to the first issue in this sequence.  Thus, at the outset of the sequence, it is Dr. Garmon's burden to try to prove, by a preponderance of the evidence, that his race was a motivating factor in Peralta's decision not to renew his contract.

If Dr. Garmon failed to prove that his race was a motivating factor in defendants' decision not to renew his contract as Vista's President, your verdict on this claim must be for defendants.

If Dr. Garmon proved that his race was a motivating factor in the decision, you may consider evidence about whether there were other motivating factors for that decision as well.

The law places the burden on the defendants (Peralta) to prove, by a preponderance of the evidence, that there were other motivating factors in their decision and that those factors were lawful.

If defendants proved that there were any such other motivating factors in their decision, then the law gives the defendants an opportunity to try to prove that, given the other motivating factors, they would have decided not to renew Dr. Garmon's contract even if Dr. Garmon's race had not been a motivating factor.  In other words, the law gives the defendants an opportunity to try to prove that they would have made the same decision anyway, independent of any role his race played in the matter.

So, if the defendants proved that there were other lawful motivating factors in the decision, you will proceed to determine whether defendants also proved that, because of those motivating factors, they would have decided not to renew Dr. Garmon's contract even if his race had not been any kind of factor at all.

**16.  FEDERAL CLAIM -- DISCRIMINATION BASED ON GENDER
– GENERALLY**

Dr. Garmon has brought a second claim of employment discrimination against defendants.  Dr. Garmon claims that his gender -- the fact that he is male -- was a motivating factor in defendants' decision not to renew his contract.  Defendants deny that Dr. Garmon's gender was a motivating factor in their decision not to renew Dr. Garmon's contract.  Defendants further contend that the decision not to renew Dr. Garmon's contract was based upon lawful reasons.


**17. FEDERAL CLAIM -- DISCRIMINATION BASED ON GENDER
– ELEMENTS AND BURDEN OF PROOF**

At this juncture I will describe for you the sequence of the issues that arise under Dr. Garmon's claim that his gender was a motivating factor in Peralta's decision not to renew his contract as the President of Vista Community College.

Because Dr. Garmon is the plaintiff, the law places the burden on him with respect to the first issue in this sequence.  Thus, at the outset of the sequence, it is Dr. Garmon's burden to try to prove, by a preponderance of the evidence, that his gender was a motivating factor in Peralta's decision not to renew his contract.

If Dr. Garmon failed to prove that his gender was a motivating factor in defendants' decision not to renew his contract as Vista's President, your verdict on this claim must be for defendants.

If Dr. Garmon proved that his gender was a motivating factor in the decision, you may consider evidence about whether there were other motivating factors for that decision as well.

The law places the burden on the defendants (Peralta) to prove, by a preponderance of the evidence, that there were other motivating factors in their decision and that those factors were lawful.

If defendants proved that there were any such other motivating factors in their decision, then the law gives the defendants an opportunity to try to prove that, given the other motivating factors, they would have decided not to renew Dr. Garmon's contract even if Dr. Garmon's gender had not been a motivating factor.  In other words, the law gives the defendants an opportunity to try to prove that they would have made the same decision anyway, independent of any role his gender played in the matter.

So, if the defendants proved that there were other lawful motivating factors in the decision, you will proceed to determine whether defendants also proved that, because of those motivating factors, they would have decided not to renew Dr. Garmon's contract even if his gender had not been any kind of factor at all.

## 18. FEDERAL CLAIM – RETALIATION

Federal law prohibits an employer from retaliating against an employee because the employee opposed decisions or practices that the employee reasonably believed were motivated by race discrimination.

One of Dr. Garmon's claims in this case is that one of the motivating factors in Peralta's decision not to renew his contract was a desire to retaliate against him for opposing employment decisions or practices by Peralta that Dr. Garmon thought were motivated by racial discrimination.

In proceeding with this claim, Dr. Garmon has the burden of proving each of the following elements:

1. That he expressed opposition to decisions or practices by Peralta on the ground that they were motivated by racial discrimination,

2. That it was reasonable, given all the circumstances, for him to believe that the decisions or practices to which he expressed opposition were motivated by racial discrimination,

3. That the opposition he expressed to decisions or practices that he reasonably believed were discriminatory was a motivating factor in Peralta's decision not to renew his contract.

If Dr. Garmon failed to prove any one of these elements, then your verdict on the retaliation claim must be for defendants.

On the other hand, if Dr. Garmon proved these required elements, you would proceed to consider any evidence about whether there were additional motivating factors in defendants' decision that were lawful.

Defendants would have the burden of proving, by a preponderance of the evidence, that there were other motivating factors in their decision and that those factors were lawful.

If defendants proved that there were other motivating factors – that were lawful – in their decision not to renew the contract, then the law would permit the defendants

to try to prove that, because of those other factors, the defendants would have decided not to renew Dr. Garmon's contract even if the defendants had not taken into account, when they were making their decision, Dr. Garmon's opposition to practices that he believed were discriminatory.

## 19.  DISCRIMINATION AND RETALIATION
## -- DEFINITION OF "A MOTIVATING FACTOR"

The issue of whether an unlawful purpose was a "motivating factor" in the decision not to renew Dr. Garmon's contract as Vista's President arises under each of Dr. Garmon's federal claims.

The law requires you to apply the following principles when you decide whether Dr. Garmon has met his burden of proving that any particular unlawful purpose was "a  motivating factor" in Peralta's decision.

To meet this burden, Dr. Garmon is not required to prove that any given unlawful purpose (race, gender, or retaliation) was the <u>only</u> motivating factor in Peralta's decision, or even that the alleged unlawful purpose was the <u>primary</u> motivating factor in the decision.

Instead, what the law requires is that Dr. Garmon prove (by a preponderance of the evidence) that the particular alleged unlawful consideration was at least one of the motivating factors in Peralta's decision.

## 20.  CALIFORNIA STATE LAW -- DEFAMATION – ELEMENTS

The fourth claim that Dr. Garmon brings in this case is only against Mr. Moore (not the District or its Board of Trustees) and is for defamation.

Dr. Garmon claims that he was defamed by Mr. Moore when Mr. Moore gave a newspaper reporter allegedly false reasons for Peralta's decision not to renew Dr. Garmon's contract – and those false reasons reflected badly on Dr. Garmon's competence and job performance.

The statements that Dr. Garmon asserts that Mr. Moore made obviously reflect badly on Dr. Garmon's competence and job performance.  You will address other issues when you decide whether Dr. Garmon has proved his defamation claim.

To proceed with his defamation claim against Mr. Moore in the setting of this case, Dr. Garmon must have proved each of the following three things <u>by a preponderance of the evidence</u>:

     1.    That Mr. Moore made one or more of the statements in question to someone other than Dr. Garmon,

     2.    That the person to whom Mr. Moore spoke reasonably understood that the statement or statements were about Dr. Garmon, and

     3.    That the statement or statements were false.

If Dr. Garmon failed to prove any one of these elements, you must enter judgment on this claim in favor of Mr. Moore.

If Dr. Garmon proved all three of the above elements by a preponderance of the evidence, you will proceed to the next issue.

This next issue is whether, at the time he made the statements, Mr. Moore either (1) knew they were false or (2) had serious doubts about the truth of the statements.  To prevail on his defamation claim, Dr. Garmon has the burden of proving either that Mr. Moore knew the statements were false or that he had serious doubts about their truth.

1    Moreover, the law imposes on Dr. Garmon a more demanding burden of proof
2  as to this last issue.  The burden of proof as to this last issue is not "preponderance of
3  the evidence," but the <u>higher standard of "clear and convincing evidence</u>."  To satisfy
4  this higher standard, the evidence on which Dr. Garmon relied must persuade you that
5  it is <u>highly probable</u> that Mr. Moore either knew the statements were false or that it is
6  <u>highly probable</u> that he had serious doubts about their truth.

## 21. CAUSATION -- GENERALLY

9    In a moment, I will give you instructions about damages.  Before I give you
10 those instructions, however, I will instruct you about the concept of "causation."

11   If Dr. Garmon proved that conduct by a defendant violated Dr. Garmon's rights
12 under federal or state law, you will be called upon to determine whether Dr. Garmon
13 also proved that the wrongful conduct "caused" Dr. Garmon to suffer the harm he
14 claims.

15   Dr. Garmon has the burden of proving "causation" -- which he must establish
16 by a preponderance of the evidence.  Under the law, damages are "caused" by an act
17 if and when a plaintiff, here Dr. Garmon, proves that the act was <u>a substantial factor</u>
18 in bringing about the damages he claims.

## 22. DAMAGES -- INTRODUCTORY INSTRUCTION

If you conclude that Dr. Garmon has proved that wrongful conduct by a defendant caused Dr. Garmon to suffer injury, loss, or harm, you will proceed to determine what amount of damages Dr. Garmon has proved he is entitled to recover. For most of the kinds of harms he claims to have suffered, Dr. Garmon has the burden of proving damages by a preponderance of the evidence. "Damages" means the amount of money that will reasonably and fairly compensate Dr. Garmon for any injury he proves was caused by wrongful conduct by a defendant.

You must determine the amount of the damages to be awarded according to the evidence and the instructions in the law that I have given you on the subject of damages.

You may not include in <u>compensatory</u> damages any amounts for the purpose of <u>punishing</u> a defendant or setting an example.

With respect to his claims for race discrimination, gender discrimination and retaliation, Dr. Garmon is claiming compensatory damages for emotional distress, pain and suffering, inconvenience, and mental anguish.

With respect to his claim for defamation, Dr. Garmon is seeking compensation for emotional and economic harms and for damage to his reputation.

## 23 . DAMAGES -- COMPENSATORY DAMAGES
## FOR EMOTIONAL DISTRESS

One category of damages that Dr. Garmon is claiming in this case is compensatory damages for "emotional distress."

The term "emotional distress" means mental or emotional distress, suffering, or anguish.  It includes all unpleasant mental or emotional reactions, such as fright, nervousness, grief, anxiety, worry, mortification, shock, humiliation and indignity, as well as physical pain.

You must award reasonable compensation for emotional distress if you find that damages of these kinds were caused in the past, or are reasonably certain to be caused in the future, by actions by a defendant that you have concluded violate Dr. Garmon's rights.

No exact standard exists for fixing the compensation to be awarded for this element of damages.  Nor is the opinion of any witness required about the amount of compensation that would be reasonable for this kind of damages.  It is impossible to present direct evidence of the monetary value of such an intangible as emotional distress.  But that fact is not a bar to recovery by Dr. Garmon for these kinds of harms.  It is your responsibility, as the jury, to determine what amount of monetary damages constitutes fair compensation for these kinds of harms -- and then to award that amount, no more and no less.

If the ways you resolve the issues about the lawfulness of a defendant's conduct and about causation make it appropriate for you to determine the amount of money that Dr. Garmon should be awarded for these kinds of damages, you should take into account the nature, character, and seriousness of any emotional distress that Dr. Garmon proved he experienced as a result of defendant's wrongful conduct.  You must consider the extent and duration of any such damages, as any award you make must cover Dr. Garmon's damages since the wrongdoing, to the present time, and even into the future -- if you find that the proofs presented support a conclusion that

Dr. Garmon's emotional distress and its consequences have continued to the present time or can reasonably be expected to continue in the future.

### 24 . DAMAGES -- SPECULATIVE DAMAGES NOT PERMITTED

You may not award Dr. Garmon speculative damages, which means compensation for future loss or harm which, while possible, is not reasonably certain to occur.

However, if Dr. Garmon proved that wrongful conduct by a defendant will cause him to suffer damages in the future, you should compensate Dr. Garmon for all the loss or harm that he proved he is reasonably certain to suffer in the future.

### 25. DAMAGES FOR DEPRIVATION OF FEDERAL CIVIL RIGHTS -- ACTUAL OR NOMINAL DAMAGES

If you find for the plaintiff on any of his <u>federal</u> claims (that is, his claim for race discrimination, gender discrimination or retaliation), but you find that the plaintiff has failed to prove that he suffered any emotional distress because of the wrongful conduct, you must return an award on that claim of nominal damages of one dollar ($1.00).

## 26.  CALIFORNIA LAW – THE DEFAMATION CLAIM
## DAMAGES – INTRODUCTION

If Dr. Garmon satisfied all the requirements for establishing a defamation claim, you will proceed to consider the damages issues that are connected to the defamation claim.

California law recognizes three categories of damages in defamation actions. We call the first of these three categories "general damages," the second "special damages," and the third "punitive damages."  I will instruct you separately about each category.

## 27.  DEFAMATION – "GENERAL DAMAGES" -- TWO COMPONENTS

"General damages" for defamation may be comprised of two components.  The first involves compensation for emotional distress that the plaintiff proved he suffered or is reasonably certain to suffer in the future as a result of the defamation.  The second component of "general damages" in this kind of case is called "presumed damages to reputation."  This second component is more difficult to explain; I will instruct you separately about it in a moment.

For purposes of a defamation claim, "emotional distress" is defined, generally, the same way it is defined under the three federal claims.  In a defamation action, however, emotional distress might also include feelings of shame, mortification, humiliation, or diminished sense of self.

In assessing Dr. Garmon's claims for emotional distress (in any of its various forms), bear in mind that Dr. Garmon has the burden of proving, by a preponderance of the evidence, (1) that he has suffered emotionally or is reasonably certain to suffer emotionally in the future, (2) the severity of any such suffering, and (3) that the emotional harms for which he seeks compensation were caused by the defamation on which he bases this claim.

1    When you set about determining whether Dr. Garmon has proved that claimed

2 emotional harms were "caused" by the publication of defamatory words you must use

3 the definition of "causation" that is set forth in Instruction number 21.  Under that

4 definition, Dr. Garmon is required to prove, by a preponderance of the evidence, that

5 the defamation was a 'substantial factor' in bringing about the shame, humiliation,

6 hurt feelings, or other forms of emotional distress for which he is seeking

7 compensation under the defamation claim.

8    As described in instruction number 23, there is no formula or other mechanical

9 means for determining the value in dollars of any particular emotional harm.  That

10 being the case, the law asks the jury, serving in its role as the voice of the community

11 and exercising its sound discretion, to ascribe a monetary value to these kinds of

12 intangible harms.

13

14    As mentioned above, there is a second component of "general damages" in

15 cases where a plaintiff has proved that a defendant issued false statements that, on

16 their face, communicate something negative about the plaintiff.  This second

17 component of "general damages" is called "presumed damages to reputation."  When

18 false statements obviously communicate something negative about a person, the law

19 'presumes' that those false statements caused damage to the person's <u>reputation</u>.  The

20 focus of "presumed damages" is on harm to reputation – not on the emotional effects

21 on the plaintiff that might be caused by harm to his reputation.

22    The law creates a "presumption" that the publication of obviously defamatory

23 words cause harm to a reputation because the law recognizes that it can be extremely

24 difficult, sometimes impossible, for a plaintiff to prove how much harm was caused

25 by defamatory statements to something as abstract and intangible as a "reputation."

26 But the law does not want a defendant who has uttered clearly defamatory words to

27 escape responsibility for his acts simply because it is so difficult to show how

28 extensive the harm was that the defamatory words caused.  Thus, the law permits a

plaintiff in this kind of case to recover "presumed damages" <u>without</u> proving that the

false statements actually caused his reputation to suffer any particular harm and without proving that any such harm caused him to suffer any other negative consequences.

In trying to understand what the target of the jury's focus should be when the jury is assessing the dollar value of "presumed damages" in a case like this it is helpful to make clear what is not included in "presumed damages." Presumed damages do not include economic harm that a plaintiff proves he actually suffered because of the defamation, e.g., loss of income, or expenses reasonably incurred in an effort to replace the false information with the correct information. Compensation for this kind of proven harm is recoverable under a different category of defamation damages ("special damages").

"Presumed damages" also do not include compensation for emotional harms that a plaintiff proves he actually suffered as a result of the defamation. Compensation for harm to a person's feelings, his sense of self, or for shame or humiliation is recoverable – but under the first of the two components of "general damages" (as described above), not as "presumed damages."

So, when deciding what to award a plaintiff as "presumed damages," a jury must not include proven economic losses or proven emotional distress.

In making its judgment about "presumed damages" the jury is considering a more abstract matter. In this specific setting, California law does not require a plaintiff to prove that he had a good reputation before the defamation occurred. Instead, for this purpose the law presumes that the plaintiff had a good reputation – and that the defamation caused some harm to that good reputation. In essence, the jury is instructed by the law to assume that the plaintiff had a good reputation, that that reputation had a real and independent existence, and that the defamatory utterances that obviously communicated something negative about the plaintiff caused that reputation to be tarnished.

Because the jury is the voice through which the community makes judgments about significant matters like these that are not amenable to scientific measurement or

1  quantification, it is the jury that is given the task of deciding how much money to
2  award a plaintiff for "presumed" (but unproven) harm to a plaintiff's reputation.

3       In making this kind of determination, the jury may take into account all the
4  circumstances that are disclosed by the evidence that the jury reasonably believes
5  shed  light on this issue.  Examples of the kinds of circumstances that the jury may
6  determine are relevant include (<u>but are not limited to</u>) the nature and apparent severity
7  of the defamatory utterances, how close to core or essential elements of the plaintiff's
8  reputation they strike, where they appeared or were articulated (e.g., in some form of
9  media, in a public meeting, during an event that commanded attention from
10 significant numbers of persons, in the work setting, or only in the presence of a small
11 group of strangers, etc.), whether the defamatory utterances were repeated and, if so,
12 how often, by whom and in what settings, the size or extent of the audience that the
13 words likely reached, whether the words reached persons who would have an interest
14 in the plaintiff's reputation or whose sense of the plaintiff's reputation might be
15 especially important to the plaintiff (personally or professionally), and the likelihood
16 that persons who were exposed to the defamatory words would be influenced by them
17 or credit them – or would discount or ignore them or would be positioned to ascertain
18 easily their falsity.

19      After taking into account all the relevant considerations, the jury decides how
20 much money to award a plaintiff for "presumed damages" to his reputation.  Fixing
21 this amount is left to the sound discretion of the jury – and could range from a
22 substantial figure down to one dollar (nominal or symbolic damages).

23      After making this judgment, the jury adds the amount it has awarded the
24 plaintiff for "presumed damages" (to his reputation) to the amount, if any, it has
25 awarded plaintiff for emotional harms.  The sum of these two figures constitutes the
26 award to the plaintiff for "general damages."

27
28

## 28.  DEFAMATION – SPECIAL DAMAGES

The law also permits a plaintiff who has proven a defamation claim to recover "special damages."  The phrase "special damages" embraces any and all <u>economic</u> harms that a plaintiff proves were caused or with reasonable certainty will be caused in the future by the publication of the defamatory statements.  Such  economic harms might include, among perhaps other things, loss of income, loss of market value of tangible or intangible property that was defamed, loss of value of a business owned by the plaintiff, and expenses the plaintiff reasonably incurred in an effort to reduce the harm caused by the publication of the false information or to get the true facts to the people who were exposed to the false information.

To be entitled to compensation for any of these kinds of losses, plaintiff must prove, by a preponderance of the evidence, that the publication of the defamation caused the loss.  To establish 'causation,' plaintiff must prove that the defamation was a substantial factor in bringing about the loss.

## 29. DAMAGES -- PRESENT CASH VALUE

If you decide that Dr. Garmon has proved that he was defamed and that the defamation is reasonably certain to cause him <u>future</u> <u>economic</u> damages (future "special damages"), then the amount of those future damages must be reduced to their present cash value.  This is necessary because money received now will, through investment, grow to a larger amount in the future.

To find present cash value, you must determine the amount of money that, if reasonably invested today, will provide Dr. Garmon with the amount of his future economic damages.

## 30.  DAMAGES – MITIGATION

The plaintiff has a duty to use reasonable efforts to mitigate economic damages.  To mitigate means to avoid or reduce damages.

<u>Defendants</u> have the burden of proving by a preponderance of the evidence:

1.      That Dr. Garmon failed to use reasonable efforts to mitigate economic damages, and

2.      The amount by which damages would have been mitigated if Dr. Garmon had used reasonable efforts to mitigate damages.

## 31.  CALIFORNIA LAW – DAMAGES -- DEFAMATION -- PUNITIVE DAMAGES

As part of his defamation claim, Dr. Garmon also seeks a category of damages called "punitive damages" as against <u>Mr. Moore</u>.

Dr. Garmon may recover damages to punish Mr. Moore if Dr. Garmon proved **by clear and convincing evidence** that Mr. Moore acted with "malice, oppression, or fraud" when he made the statements, if any, that you determine to be defamatory. "Malice," "oppression," and "fraud" are legal phrases of art that I will define for you.

As I have explained, "clear and convincing evidence" is a more exacting standard of proof than "preponderance of the evidence."  In order to satisfy this more exacting standard, plaintiff must persuade you that it is <u>highly probable</u> that this fact is true.

To prove that Mr. Moore acted with "malice," Dr. Garmon must prove either (1) that Mr. Moore acted with intent to cause injury, or (2) that Mr. Moore's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another.  A person acts with "knowing disregard" when he or she is aware of the probable dangerous or harmful consequences of his or her conduct and deliberately fails to avoid those consequences.

1   "Oppression" means that Mr. Moore's conduct was despicable and subjected

2   Dr. Garmon to cruel and unjust hardship in knowing disregard of his rights.

3   "Despicable conduct" is conduct that is so mean, vile, base, or contemptible

4   that it would be looked down on and despised by reasonable people.

5   "Fraud" means that Mr. Moore intentionally misrepresented or concealed a

6   material fact and did so intending to deprive Dr. Garmon of property or of a legal

7   right or otherwise to cause him injury.

8   If your findings make it appropriate to proceed to determine an amount of

9   punitive damages, the parties will present evidence relevant to that determination

10  after your deliberations.

11

12

13  ## 32. TRANSITIONAL INSTRUCTION

14  I have now completed giving you specific instructions about the law applicable

15  to this case.  At this juncture I will give you some concluding instructions about the

16  procedures you should follow from here on.

17

18

19  ## 33. COMMUNICATION WITH THE COURT

20  If it becomes necessary to communicate with me during deliberations, you may

21  send a note in one of the envelopes we provide through the courtroom deputy or the

22  law clerk, signed by a juror.  Do not disclose the content of your note to the

23  courtroom deputy or the law clerk.

24  Do not communicate with me about the case except by a signed note.  I will

25  only communicate with you about the case in writing or in open court.

26  Do not disclose any vote count in any note to me or in open court.

27

28

27

## 34. DUTY TO DELIBERATE

When you retire, you should elect one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can. Your verdict must be unanimous.

Each of you must decide the issues for yourself, but you should do so only after you have considered all the evidence, discussed it fully, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should, but do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision, after having considered all the evidence and the views of your fellow jurors. Do not change an honest and firmly held belief about the weight and effect of the evidence simply to reach a verdict.

## 35. RETURN OF VERDICT

After you have reached unanimous agreement on a verdict, your foreperson will fill in, date, and sign the verdict form (the "Special Interrogatories") and advise the court that you have reached a verdict.